## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

CHRISTOPHER MCDANIEL,

      *Plaintiff,*

                    CASE NO. 2:22-cv-11092

*v.*

                    District Judge Laurie J. Michelson

STEPHANIE JACKSON,      Magistrate Judge Patricia T. Morris

      *Defendant.*

_____/

## REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 21)

### I.   RECOMMENDATION

For the following reasons, **I RECOMMEND** that the Court **GRANT** Defendant's motion for summary judgment (ECF No. 21) **IN PART**.

If adopted, the Court would: (1) dismiss McDaniel's official capacity claims, (2) deny summary judgment on McDaniel's claim that Jackson violated his First Amendment right to free speech by inhibiting his ability to send outgoing mail, and (3) dismiss all other claims against Jackson.

### II.   REPORT

#### A.   Background

Christopher McDaniel is a prisoner in the custody of the Michigan Department of Corrections ("MDOC").   (*See* ECF No. 23, PageID.201).   While incarcerated, McDaniel began corresponding with an attorney from the Cooley Law School's Innocence Project, a legal organization that helps wrongfully convicted inmates pursue release from prison.   *Cooley Innocence Project*, Cooley Law School, https://www.cooley.edu/academics/experiential-learning/innocence-project   (last visited Sept. 29, 2023); (ECF No. 21-3, PageID.142–43, 146; ECF No. 23, PageID.198–200).   Although McDaniel apparently intended to challenge his conviction—either collaterally or on appeal—he provides no information regarding the specific claim he intended to pursue with the Innocence Project's assistance.

McDaniel prepared a letter in response to a request from the Innocence Project for information regarding his criminal conviction.   (ECF No. 21-3, PageID.143–44; ECF No. 23, PageID.200).   McDaniel brought this letter to a "residential unit manager" named Stewart and asked that Stewart mail his letter through the prison's "expedited legal mail process."   (ECF No. 21-3, PageID.143–45; ECF No. 23, PageID.201).   The parties provide little information about the prison's "expedited legal mail process."   (ECF No. 23, PageID.201).   Apparently, the MDOC utilizes two distinct systems for processing outgoing mail: one for regular correspondence and one for "legal" mail.   (*See id.* at PageID.201, 203, 205–06).   The MDOC defines legal mail as mail that is "clearly" addressed to "a court, an attorney, or a party to a

lawsuit . . . ." (*Id.* at PageID.205–06).  Sending letters through the "expedited legal mail" process, rather than the regular mail process, provides inmates with two advantages.  First, indigent prisoners may borrow funds to either initiate lawsuits or mail "legal materials" to "a court, an attorney, or a party to a lawsuit due to pending litigation." (*Id.*)  And second, mail designated as "legal mail" is delivered "as soon as possible," although the policy provides no concrete timeline for this process, and neither the policy nor any other material in the record describes how long it takes officials to deliver regular mail by comparison.  (*Id.* at PageID.206).  Neither party clarifies how long it takes for legal mail to be delivered, nor do they explain how long it takes officials to process regular outgoing mail by comparison.

Stewart refused to process McDaniel's letter as legal mail.  (*Id.* at PageID.201).  Although McDaniel addressed his letter to an "attorney" named "David Williams" at the "Cooley Law School['s]" "Innocence Project," Stewart claimed that the letter did not qualify as "legal mail" under MDOC policy.  (*Id.* at PageID.198, 201; *see also* ECF No. 21-3, PageID.144).  McDaniel believes this rationale was pretext, explaining that Stewart likely rejected his letter in retaliation for a grievance he recently filed against her.  (ECF No. 1, PageID.7; ECF No. 23, PageID.210).  After filing a second grievance against Stewart, this time for refusing to send his letter as "legal mail," McDaniel held on to his letter until he could present

it to a different residential unit manager.  (ECF No. 21-3, PageID.145; ECF No. 23, PageID.201).

A few weeks later, McDaniel again tried to send his letter through the legal mail process, this time presenting the envelope to Stephanie Jackson, another residential unit manager.  (ECF No. 21-2, PageID.131).  But Jackson told McDaniel that she would not send his letter as legal mail "because . . . Stewart told [her] not to . . . ."  (ECF No. 21-3, 144, 148, 151–52).  Of course, Jackson denies that she refused to process McDaniel's letter under the expedited legal mail procedure simply because Stewart told her not to.  (ECF No. 21-2, PageID.131–32).  Rather, Jackson maintains that the letter was addressed only to the "Cooley Law School" and that based on her understanding of MDOC policies, the letter did not qualify as legal mail.  (*Id.*)

Again, McDaniel chose to retain the letter rather than send it out through the regular mail process.  (ECF No. 21-3, PageID.146).  Eventually, McDaniel succeeded in sending his letter through the legal mail process after transferring to a different facility.  (*Id.* at PageID.147).  McDaniel later brought this lawsuit against Jackson under 42 U.S.C. § 1983, in both her individual and official capacities, for monetary damages only.  (ECF No. 1, PageID.2, 8).  Jackson has now moved for summary judgment on all of McDaniel's claims.  (ECF No. 21).

## B.   Standards of Review

Although Jackson purports to move for summary judgment under Rule 56, she argues in the alternative that the Court should dismiss McDaniel's complaint for failure to state a plausible claim for relief under Rule 12(b)(6). (*See* ECF No. 21, PageID.112–13, 117–19, 121). Thus, while contained in a single document, Jackson presents the Court with two distinct motions: one to dismiss McDaniel's complaint and one for summary judgment.

Federal Rule of Civil Procedure 12(d) does not prohibit the Court from ruling on both of Jackson's alternative motions. Rule 12(d) provides that when "matters outside the pleadings are presented to and not excluded by the Court" on a 12(b)(6) motion, the Court must treat the motion "as one for summary judgment." Fed. R. Civ. P. 12(d). Accordingly, the Sixth Circuit has explained that when a party supports or opposes a Rule 12(b)(6) or Rule 12(c) motion with evidence outside the pleadings, district courts must either "expressly" exclude the evidence from consideration or treat the motion as one for summary judgment. *Max Arnold & Sons, LLC v. W.L. Hailey & Co., Inc.*, 452 F.3d 494; *see also Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483–85 (6th Cir. 2020). And some courts within this Circuit have extended those holdings to situations where exhibits are merely provided alongside a Rule 12 motion, in support of an alternative motion for summary judgment. *E.g.*, *Christensen v. United States*, No. 5:14-134-DCR, 2015 WL 19114337, at \*2 (E.D.

Ky. Apr. 27, 2015); *accord Brisbane v. Hogan*, No. JKB-17-1598, 2018 WL 1399813, at *2 (D. Md. Mar. 20, 2018).

That approach is mistaken.  Rule 12(d) only applies where "matters outside the pleadings" are presented "*on*" a Rule 12 motion.  Fed. R. Civ. P. 12(d) (emphasis added).  And a motion is not synonymous with a filing.  Indeed, a motion is merely "a formal request directed to a court," and a single filing can contain multiple "requests."  Bryan A. Garner, The Redbook: A Manual on Legal Style § 24.1(a), at 489 (4th ed. 2018).  Thus, a brief can reference exhibits that are germane to only one of multiple motions contained in the same filing.  If a party presents exhibits concerning matters outside of the pleadings, but only relies on those exhibits to support its Rule 56 motion, then Rule 12(d) is not implicated.  *See, e.g.*, *Beshears v. Marion Cty.*, No. 5:19-cv-304, 2021 WL 5034967, at *1, *4 (M.D. Fla. Sept. 17, 2021); 2015 WL 5286574; *Stuart v. Lisiak*, No. 1:14cv-1401, 2015 WL 5286574, at *1 (M.D. Pa. Sept. 10, 2015).

That is precisely what Jackson does here.  Although she presents exhibits that contain matters outside of the pleadings, she only relies on these exhibits to advance her Rule 56 motion.  Whenever she challenges the sufficiency of McDaniel's pleadings, she does not rely on any exhibits.  (*See* ECF No. 21, PageID.112–13, 117–19, 121).

Accordingly, the Court should first consider the threshold issue of whether McDaniel states a plausible claim for relief, and if so, the Court should then consider whether McDaniel raises a genuine dispute of material fact under Rule 56.

### 1.    12(b)(6) Standard

A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Accordingly, a plaintiff's complaint shall be dismissed for failure to state a claim if it lacks sufficient "factual matter (taken as true) to" provide "plausible grounds to infer" that the elements of a claim for relief could be met. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *see* Fed. R. Civ. P. 12(b)(6).  A complaint must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Mere labels, conclusory statements, or "formulaic recitations" of the elements of a cause of action are not sufficient to meet this burden if they are unsupported by adequate factual allegations.  *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The requirement to provide a plausible claim does not require that a claim be "probable"; however, a claim must be more than merely "conceivable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–80 (2009).

Because McDaniel filed his complaint *pro se*, his pleadings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

### 2. Summary Judgment Standard

Summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that would affect "the outcome of the suit under the governing law. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there . . . are any genuine factual issues that properly can be resolved only by a finder of fact . . . ." *Id.* at 249–50, 255. Accordingly, "the evidence, all facts, and any inferences that may be drawn from the facts" must be viewed "in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004). The nonmoving party cannot rebut a Rule 56 motion by merely alleging that a genuine factual dispute exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 n.3 (1986) (quoting Fed. R. Civ. P. 56(e)). Instead, the nonmoving party must show that there is sufficient evidence in the record for "a reasonable finder of fact [to] find in its favor." *Anderson*, 477 U.S. at 248.

### C. Discussion

McDaniel alleges that Jackson violated his constitutional rights in two ways. First, he asserts that Jackson's refusal to process his letter as expedited, "legal mail" was unconstitutional in itself. And second, he argues that same conduct also chilled

his right to file grievances, alleging that Jackson refused to process his letter as legal mail in retaliation for a grievance McDaniel recently filed against one of her coworkers.  For the following reasons, I suggest that only the latter claim should be dismissed.

### 1.  McDaniel's Right to Send Outgoing Mail

According to McDaniel, Jackson's refusal to mail his letter to counsel at the Cooley Law School's Innocence Project under the MDOC's "legal mail" procedure violated his right to access the courts.  But it is the facts a plaintiff alleges, not the sources of relief the plaintiff identifies, that circumscribe the claims at issue in a case. *Johnson v. City of Shelby*, 574 U.S. 10 (2014); *see also* 5 Charles Alan Wright, et al., Federal Practice and Procedure § 1219 & nn.7–8 (4th ed. 2023).  Indeed, a plaintiff need not identify any legal theory to state a plausible claim for relief. *Skinner v. Switzer*, 562 U.S. 521, 530 (2011).  And that is particularly true where the plaintiff is a pro se litigant whose complaint must be construed "liberally." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  So although McDaniel grounds his claim in his right to access the courts, the Court is not bound to construe his claim only under this particular theory.  The Court's focus is not on the legal jargon that an untrained, pro se inmate uses to describe his claims, but on the substance of those claims themselves. *Hampton v. Bulholtz*, No. 20-3480, 2021 WL 1884838, at *2 (6th Cir. Jan. 22, 2021).

With that in mind, McDaniel's claim implicates three distinct constitutional provisions: his right to access the courts, his First Amendment right to free speech, and his Sixth Amendment right to counsel.  But only on his free speech claim does McDaniel both plausibly allege a constitutional violation and raise a genuine dispute as to whether Jackson violated his constitutional rights.

### a.  Access to the Courts

Start with McDaniel's "access to the courts" theory.  Rooted in the Fourteenth Amendment's Due Process Clause and First Amendment's Petition Clause, inmates have a constitutionally protected right to "access" the courts.  *DeMarco v. Davis*, 914 F.3d 383, 387 (5th Cir. 2019); *see Swekel v. City of River Rouge*, 119 F.3d 1259, 1262 (6th Cir. 1997).    But this right does not bestow prisoners with unfettered access to any useful legal resource, transforming them into "litigating engines capable of filing everything from shareholder derivative action to slip-an-fall claims." *Lewis v. Casey*, 518 U.S. 343, 355 (1996).  Rather, the right only applies where prisoners challenge their sentences or the "conditions of their confinement." *Id.*  And even in those situations, it only guarantees inmates a "reasonably adequate opportunity" to pursue "nonfrivolous" claims.  *Id.* at 351, 356.

That reasonable opportunity to present claims is the "touchstone" of the right to access the courts.  *Id.* at 351.  And so the tools an inmate might use to secure this right—say, access to legal research materials, pen and paper, or postal services—are

protected only to the extent that they secure "meaningful" access to the courts. *Id.* (internal quotation marks omitted) (quoting *Bounds v. Smith*, 430 U.S. 817, 823, 830 (1977)). Restrictions that burden an inmate's ability to litigate "in some theoretical sense," but ultimately do not prevent the inmate from "meaningful[ly]" pursuing his or her claims, are permissible. *Id.* at 351–52. Put another way, inmates have a protected right to present grievances to a court, but not necessarily to "discover grievances" or to "litigate effectively once in court." *Id.* at 354 (emphasis removed).

This understanding of the scope of an inmate's right to access the courts runs up against another foundational constitutional principle: standing. The Constitution only grants federal courts the power to decide "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1. That is, courts can only decide "actual, ongoing" disputes between parties. *Kentucky v. United States ex rel. Hagel*, 759 F.3d 588, 595 (6th Cir. 2014). So to prevail on an access to the courts claim, a prisoner must show (among the things not relevant here) that he or she has sustained (or will sustain) an "injury in fact"—a harm that is both "concrete and particularized" and "actual or imminent." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). In other words, a plaintiff cannot allege an injury that is purely "hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks removed).

11

So because an inmate's right to access the courts does not create a freestanding right to all tools that could be useful for litigation, inmates do not have standing to challenge less-than-satisfactory means of accessing the courts unless those subpar means "frustrate" the inmate's ability to pursue a nonfrivolous claim. *Lewis*, 518 U.S. at 352–53. An inmate, then, cannot establish an actual injury without describing the claims that were prejudiced by the prison's conduct—and in enough detail to plausibly allege each element of the underlying claim. *Christopher v. Harbury*, 536 U.S. 403, 414–16 (2002). Otherwise, a court could only speculate as to whether the underlying cause of action fell within the scope of the inmate's right to access the courts. *Id.*

Yet here, McDaniel provides few details about the claim that Jackson allegedly hindered. He alleges only that he attempted to send a letter concerning "police file numbers" and "lab report numbers" to an "attorney" for the Cooley Law School's "Innocence Project"—an organization that litigates "cases" concerning "DNA or unreliable forensic evidence that can be tested to prove innocence." (ECF No. 1, PageID.4–5, 7, 15, 20–21). And outside the four-corners of McDaniel's complaint, the record contains no more information about what specific claim McDaniel might have been pursuing. (*Id.*; ECF No. 21-3; ECF No. 23, PageID.198–216); *see* ECF No. 23, PageID.178–79 (arguing that McDaniel need not establish an actual injury)). This information is insufficient for the Court to determine whether

Jackson frustrated McDaniel's ability to present an actual "claim," rather than his ability to conduct a fishing expedition that might reel in a possible grievance. *See Christopher*, 536 U.S. at 414–16.  And if Jackson did in fact frustrate McDaniel's plans to present a fully formed claim, McDaniel does not explain his claim in enough detail for the Court to determine whether it is nonfrivolous. *See id.*  "Depriving [an inmate] of a frivolous claim," after all, deprives the inmate "of nothing at all, except perhaps the" possibility of "sanctions." *Lewis*, 518 U.S. at 353 & n.3.  So if Jackson frustrated McDaniel's attempts to investigate a frivolous claim, then McDaniel would not have suffered an actual injury.  By failing to detail his underlying claim, McDaniel neither plausibly alleges, nor genuinely disputes, that he sustained an actual injury. *See Christopher*, 536 U.S. at 414–16; *cf. Pouncy v. Burgess*, No. 1:23-cv-279, 2023 WL 4101188, at *10 (W.D. Mich. June 21, 2023).

Setting any issues with McDaniel's standing aside, his access to the courts claim still fails on its merits.  Although McDaniel takes issue with Jackson's refusal to process his letter as "legal mail," he never clearly explains what it means for letters to be designated as "legal mail" or how missing out on that process impacted him.  Indeed, the only time McDaniel endeavors to explain why it was important to send his letter through the "legal mail" process is in a short, three-page section of his response brief where he asserts that only mail sent through the "legal mail" process is guaranteed to remain confidential.  (ECF No. 23, PageID.180–82).  But this bald

assertion is not evidence, and McDaniel points to no materials in the record (say, declarations, affidavits, or copies of MDOC policy directives) suggesting that he prison officials might read his mail unless it is sent through the legal mail process. *See Anderson*, 477 U.S. at 248; *Taylor v. Small*, 350 F.3d 1286, 1294–95 (D.C. Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A).   In fact, the MDOC's policies indicate that officials would not have read his letter even if he sent it through the regular mail process instead of the "expedited" legal mail process.   Under Michigan regulations, officials are required to inspect all outgoing mail from inmates in segregation.   Mich. Admin. Code r. 791.6603(1) (2023); Mich. Dept. of Corrections, Policy Directive No. 05.03.118 ¶ T (August 1, 2023).   For inmates in the general population, prison officials may not open or inspect any outgoing mail without "reasonable grounds" to believe that the letter in question "contravenes federal or state law"; "violates postal regulations"; or contains prohibited content, such as "threats" or "criminal plan[s]."   Mich. Admin. Code r. 791.6603(5), (7); *see also* Mich. Dept. of Corrections, Policy Directive No. 05.03.118 ¶ U.

And even where an inmate attempts to send a letter from segregation, or where reasonable grounds exist for inspecting a letter, officials still may not read its contents if the letter is "clearly" addressed to an "attorney[]"—regardless of whether the letter is sent through the regular mail process or the expedited process reserved for "legal" mail.  *See* Mich. Admin. Code r. 791.6603(1)(a), (7)(b); *see also* Mich.

Dept. of Corrections, Policy Directive No. 05.03.118 ¶¶ T, U.  McDaniel's letter, therefore, would receive the same degree of protection under either process.  And because McDaniel addressed his letter to "Attorney David Williams" at the "Cooley Law School['s]" "Inn[ocence] Project," MDOC regulations would prohibit officials from reading its contents—even if the letter was not formally designated as "legal mail."  (ECF No. 1, PageID.21; ECF No. 23, PageID.28).

Apart from this brief discussion, all the information McDaniel provides about the MDOC's "legal mail" procedure comes from an excerpt of an internal MDOC policy attached to his complaint.  (ECF No. 1, PageID.23–24).  Though light on details, this regulation explains that the "expedited legal mail" process confers two benefits on prisoners.  First, indigent prisoners may borrow funds to either initiate lawsuits or mail "legal materials" to "a court, an attorney, or a party to a lawsuit due to pending litigation."  (*Id.*)  And second, mail designated as "legal mail" is delivered in an "expedited" manner—what exactly that means, the policy does not say.  (*Id.* at PageID.24).  Indeed, the policy simply instructs officials to process legal mail "as soon as possible," but it provides no concrete timeline, and neither the policy nor any other material in the record describes how long it takes officials to process regular mail by comparison.  (*Id.*)

Because neither McDaniel's complaint nor his exhibits indicate that he was indigent and unable to gather funds for postage, he provides no basis for the Court

to find that Jackson prevented him from sending the letter by declining to process the letter as legal mail.  At most, McDaniel alleges that Jackson delayed his delivery of the letter by forcing him to resort to the regular mail process.[1]  To be sure, any delay in processing legal mail that prolongs its delivery is a palpable, concrete injury. Prisoners have an interest in not just obtaining favorable judgments in cases that challenge their sentences, but in obtaining relief in a timely manner.  *See Ensminger v. Credit Law Ctr., LLC*, No. 19-2147-JWL, 2019 WL 4341215, at *3 (D. Kan. Sept. 12, 2023) ("[T]he loss of the time value of money—even a small amount— constitutes a tangible financial injury . . . ."); *see also* (ECF No. 1, PageID.8 (arguing that Jackson injured McDaniel by delaying the resolution of his prospective litigation "which[,] in turn[,]" may have caused McDaniel to remain "incarcerated" for "longer than necessary")).[2]  Relief today is more valuable than relief tomorrow. *See Lewis*, 518 U.S. at 353 (explaining that prisoners need only show that their claim was "frustrated," not necessarily prevented, to demonstrate an actual injury).

But McDaniel's right to access the courts does not entitle him to any resource that might help him present his claims in the most skillful manner possible.  *See*

---

[1] McDaniel eventually sent his letter through the legal mail process after transferring to a "different facility."  (ECF No. 21-3, PageID.147).

[2] *Contra Bradford v. Gerth*, No. 2:07-CV-225, 2008 WL 6155038, at *2 (W.D. Mich. Feb. 21, 2008) ("To show actual injury, a prisoner must allege that Defendants caused a non-frivolous claim to be lost, or that the presentation of a non-frivolous claim is currently being prevented.").

*Lewis*, 518 U.S. at 354. A "meaningful" opportunity to "present" his claims is the constitutional floor. *Id.* at 351, 354; *see Hill v. Dailey*, 557 F.3d 437, 439 (6th Cir. 2009); *Pruitt v. Mote*, 503 F.3d 647, 657 (7th Cir. 2007). So without even telling the Court how much of a delay he would have experienced by resorting to the prison's regular mail process, McDaniel cannot prove that he was denied meaningful access to the courts. Again, McDaniel fails to plausibly allege that Jackson violated his right to access the courts, and even if he did, he has not raised a genuine dispute of material fact. Accordingly, I suggest that the Court dismiss McDaniel's access to the courts claim.

### b. Freedom of Speech

The First Amendment does not just protect an prisoners' ability to present claims challenging their convictions or conditions of confinement. Prisoners also have a distinct First Amendment interest in both sending and receiving any written correspondence. *Thornburgh v. Abbott*, 490 U.S. 401 (1989). So although McDaniel grounds his allegation that Jackson impeded his ability to send mail in his right to access the courts, this allegation also implicates his broader interest in free speech.

The First Amendment protects both the sender and recipient of "direct personal correspondence" from "unjustified" government interference with their communication. *Simpson v. County of Cape Girdeau*, 202 F. Supp. 3d 1062, 1067

17

(E.D. Mo. 2016) (citing *Procunier v. Martinez*, 416 U.S. 396, 408–09 (1974) (*overruled in part by Thornburgh v. Abbott*, 490 U.S. 401 (1989))).  But conduct that typically would ordinarily be "unjustified" may be permissible in the jail setting. *Thornburgh*, 490 U.S. at 407–08.  The Supreme Court has long been mindful that the judiciary is "ill equipped" to resolve the "complex and intractable" problems facing American jails "by decree," and it has afforded considerable "deference" to the judgment of "prison authorities."  *Turner v. Safley*, 482 U.S. 78, 85 (1987) (internal quotation marks omitted) (quoting *Martinez*, 416 U.S. at 404–05).  So although "imprisonment does not automatically deprive" detainees of their First Amendment protections, the Court has noted that "the Constitution sometimes permits greater restriction of" a detainee's rights than it would allow elsewhere. *Beard v. Banks*, 548 U.S. 521, 528 (2006).

For that reason, prison officials generally may restrict an inmate's First Amendment rights if doing so would be "reasonably related to legitimate penological interests" and not an "exaggerated response" those concerns.  *Turner*, 482 U.S. at 87, 89, 90–91.  But a more rigorous standards applies where prison officials inhibit a prisoner's ability to send outgoing mail to entities outside of the prison system.  In these situations, prison officials may only burden a prisoner's delivery of outgoing mail to "further an important or substantial government interest unrelated to the suppression of expression," and in doing so, the prison may not limit

18

the inmate's First Amendment freedoms to any degree "greater than is necessary or essential to the protection of the particular governmental interest involved." *Martucci v. Johnson*, 944 F.2d 291, 295–96 (6th Cir. 1991) (internal quotation marks omitted) (quoting *Procunier v. Martinez*, 416 U.S. 396, 413 (1974)); *see also Bell-Bey v. Williams*, 87 F.3d 832, 838 & n.7 (6th Cir. 1996).

Prison officials, not inmates, carry the burden of justifying restrictions on outgoing mail. *Valiant–Bey v. Morris*, 829 F .2d 1441, 1443 (8th Cir.1987); *Perkins v. Chrones*, No. C 09-5855, 2011 WL 4527783, at *2 (N.D. Cal. Sept. 29, 2011); *see Martinez*, 416 U.S. at 413–15. So courts cannot grant summary judgment in favor of a prison official unless that official presents evidence that the regulation at issue advances an important interest through adequately tailored means. *See Perkins*, 2011 WL 4527783, at *2. Where an official neglects to advance any justification for a regulation, an inmate need only show that the regulation burdened his or her right to send outgoing mail. *See id.*

And for similar reasons, an inmate's complaint need neither prognosticate any important interests that the state may later identify nor allege that the regulation is overbroad, as such requirements may compel the prisoner to plead more facts than he or she might ultimately need to prove. *See Swierkiewicz v. Sorema N.A.*, 514 U.S. 506, 511–12 (2002) ("It thus seems incongruous to require a plaintiff, in order to survive a motion to dismiss, to plead more facts than he may ultimately need to prove

to succeed on the merits . . . ."); *cf. Fluker v. Worpell*, No. 1:22-cv-12045, 2022 WL 19731086, at *7 (E.D. Mich. Sept. 21, 2022) (explaining that where equal protection and substantive due process challenges are subject to heightened scrutiny, plaintiffs need not plead any facts demonstrating that the government's actions fail to withstand scrutiny because the government bears the burden of justifying its conduct).

Although the burden of justifying the delayed processing of McDaniel's letter falls on Jackson, that burden should not be an onerous one under these circumstances.  McDaniel is not the first inmate to challenge his prison's sluggish delivery of outgoing mail, and courts typically hold that minor or sporadic delays in processing outgoing mail are adequately tailored to important government interests.[3] For example, courts have noted the administrative hurdles inherent in processing mail on behalf of hundreds, if not thousands, of inmates, reasoning that limited staffing and large volumes of mail necessarily slow the collection and delivery of mail.  *E.g.*, *Owen v. Shuler*, 466 F. Supp. 5, 7 (N.D. Ind. Oct. 7, 1977).  Courts have also recognized that even outgoing mail can sometimes require inspection, as letters addressed to entities outside of the prison can contain "escape" plots, blackmail, or

---

[3] *See, e.g.*, *Cotton v. Schotten*, No. 95-4085, 1997 WL 299386, at *1 (6th Cir. June 4, 1997) ("[S]hort, non-content based delays in prison mail are not unreasonable . . . ."); *Dickerson v. Global Tel Link Corp.*, No. 7:23-cv-00082, 2023 WL 3026735, at *2 (W.D. Va. Apr. 20, 2023) (collecting cases); *Sayres v. Curtis*, No. 1:10-0193, 2012 WL 5285395, at *2 (S.D. W. Va. Sept. 27, 2012).

other threats to prison security.  *Altizer v. Deeds*, 191 F.3d 540, 548–49 (4th Cir. 1999).  Because McDaniel does not clarify how long of a delay he would have faced by resorting to the regular mail process, it should be easy for Jackson to explain why any delays in the regular mail process are justified, if not unavoidable.[4]

Yet Jackson stumbles over this low hurdle.  Nowhere in her response brief does Jackson explain how much of a delay McDaniel would have experienced by resorting to the jail's regular mail process instead of its expedited legal mail process. (ECF No. 21).  She does not explain whether it is possible for all mail to be processed in an "expedited" manner.  (*Id.*)  And if so, she does not explain how the use of a comparatively slower process for certain types of mail might further an important

---

[4] A handful of courts have dismissed similar claims without even asking whether a prison's delays in processing outgoing mail are justified.  These courts reason that under '*de minimis non curat lex*'—that is, the principle that the law does not concern itself with trifling disputes—courts refrain from awarding inmates for trivial slights against First Amendment interests.  *See Ingraham v. Wright*, 430 U.S. 651, 674 (1977).  Thus, for example, the Seventh Circuit once affirmed summary judgment against a Muslim inmate who brought a free exercise claim alleging that officials denied only three out of eight-hundred and ten requests for "pork-free" meals.  *Rapier v. Harris*, 172 F.3d 999, 1006 n.4 (7th Cir. 1999). And for similar reasons, courts have also refused to enter judgments against prison officials for brief or sporadic delays in processing inmates' mail—without endeavoring to analyze whether those delays are adequately tailored to an important-enough interest.  *E.g.*, *Reyes v. Walsh*, No. 1:12-CV-2004, 2013 WL 4041576, at *5–6 (M.D. Pa. June 12, 2013); *see, e.g.*, *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999); *Owen*, 466 F. Supp. at 7; *Woolfork v. Chesapeake Mail Clerk*, No. 1:09cv198, 2009 WL 7024994, at *1 (E.D. Va. Apr. 15, 2009).  That approach is mistaken.  Although the Supreme Court has recognized that there is generally a minimal "level of imposition with which the Constitution is not concerned," the Court has since refused to recognize a *de minimis* exception for First Amendment violations that lack "sufficient tailoring or justification."  *Ingraham*, 430 U.S. at 674; *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 567 (2001).

interest.  (*Id.*)  To the extent McDaniel challenges Jackson's *decision* to treat his letter as "regular mail" (rather than the speed of the regular mail process), Jackson again makes no attempt to justify her choice except to state that she could not determine that McDaniel's letter qualified as legal mail because it was addressed only to "Cooley Law School." (*Id.* at PageID.109, 115; ECF No. 21-2, PageID.131). But construing the facts in the light most favorable to McDaniel, he addressed the letter to an "Attorney" named "David Williams" at the school's "inn[ocence] project," and Jackson could have verified both the existence of the clinic and Mr. Williams's identity through a quick Google search.  (ECF No. 1, PageID.21).[5] Accordingly, I suggest that McDaniel states a plausible claim for relief, and I also recommend that the Court deny summary judgment in favor of Jackson on

---

[5] Citing *Colvin v. Caruso*, Jackson argues that she need not justify her interference with McDaniel's mail because "random and isolated" deprivations of First Amendment interests are lawful.  *Colvin v. Caruso*, 605 F.3d 282, 293 (6th Cir. 2010) (internal quotation marks omitted) (quoting *Johnson v. Wilkinson*, 229 F.3d 1152, 2000 WL 1175519, at *2 (6th Cir. Aug. 11, 2000)); (ECF No. 21, PageID.121–22).  Jackson reads this language too literally. Although the *Colvin* Court did not explain why it believed "random and isolated" interferences with First Amendment interests to be lawful, it apparently used that phrase to describe the standard for *accidental* First Amendment deprivations.  *See Colvin*, 605 F.3d at 293 (reasoning that officials who "mistakenly" served non-kosher food to a Jewish prisoner did not violate the First Amendment because their transgressions were "isolated"). Indeed, the line of cases *Colvin* relies on clarify that random and isolated interferences do not raise constitutional concerns only if they are accidental.  *See, e.g.*, *Smith v. Maschner*, 899 F.2d 940, 944 (8th Cir. 1990).  *Colvin*, therefore, does not apply here because (1) McDaniel raises a genuine dispute as to whether Jackson mistakenly read his envelope as being addressed simply to the Cooley Law School and (2) there is no evidence in the record indicating that the slow processing of regular mail, relative to "expedited" legal mail, is accidental.

McDaniel's claim that she violated his First Amendment right to speech by declining to process his letter as legal mail.

### c. Sixth Amendment

Finally, McDaniel's claim might be liberally construed as alleging a violation of his Sixth Amendment right to counsel.  But this claim can be quickly disposed of.  The Sixth Amendment right to counsel applies only in criminal proceedings.  *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991).  It attaches once the government brings "formal charges" against a criminal defendant, and it entitles the defendant to representation for proceedings before the trial court and on an "appeal of right."  *United States v. Gouveia*, 467 U.S. 180, 189 (1984); *United States v. Manso-Zamora*, 991 F.3d 694, 696 (6th Cir. 2021).  But for all other challenges to a defendant's sentence—for example, appeals to a state's highest court, habeas corpus proceedings, or § 1983 actions—the Sixth Amendment does not apply.  *See Manso-Zamora*, 991 F.3d at 696; *see also Huguely v. Mays*, 964 F.3d 489, 499 (6th Cir. 2020).

McDaniel's sparse description of his underlying claim once again proves fatal.  McDaniel does not provide enough information for the Court to determine whether his letter to counsel concerned an appeal as of right or some other proceeding to which the Sixth Amendment would not apply.  (*See* ECF Nos. 1, 23).  Accordingly,

McDaniel neither plausibly alleges a Sixth Amendment violation nor raises a genuine dispute as to whether officials frustrated his right to counsel.

## 2. Retaliation

Last, McDaniel brings a First Amendment retaliation claim, alleging that Jackson refused to process his letter as legal mail in retaliation for a grievance McDaniel filed against another official.  The government may not punish individuals for exercising a protected constitutional right. *Zilich v. Longo*, 34 F.3d 359, 365 (6th Cir. 1994).  So even "government actions" that typically would "not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to" retaliate against "an individual for [the] exercise of a constitutional right." *Thaddeus-X v. Blatter*, 175 F.3d 378, 386 (6th Cir. 1999).

Thus, the focus of a retaliation claim is not whether an adverse state action, in itself, violates the Constitution, but whether that action would chill an individual from exercising a constitutional right. *See id.*  Accordingly, a plaintiff alleging retaliation must establish three elements: (1) that he or she "engaged in protected conduct"; (2) that the defendant took "an adverse action" against him or her "that would deter a person of ordinary firmness from continuing to engage in that conduct"; and (3) that "but-for" the plaintiff's protected conduct, the Defendant would not have subjected the plaintiff to the adverse action. *Id.*; *Nieves v. Bartlett*, 139 S. Ct. 1715, 1721 (2019) (internal quotation marks omitted).

Without venturing into a thorny discussion of whether McDaniel had a clearly established right to file his grievance, or of Jackson's motivations for refusing to process McDaniel's letter as legal mail, McDaniel's claim can be dismissed for his failure to allege or genuinely dispute an adverse action.  A government action is "adverse" only if it "would 'deter a person of ordinary firmness' from the exercise of the right at stake." *Thaddeus-X*, 175 F.3d at 396 (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir.1982)).  And in most circumstances, a threat to slowly process outgoing mail would not deter a person of ordinary firmness from filing grievances. *See Harris v. Sowers*, No. 2:16-cv-888, 2022 WL 16964169, at *3 (S.D. Ohio Nov. 16, 2022); *Annabel v. Mich. Dept. of Corrections*, No. 1:14-cv-756, 2014 WL 4187675, at *14 (W.D. Mich. Aug. 21, 2014); *Willis v. Draper*, 2010 WL 1875704, at *8 (E.D. Tenn. May 10, 2010).  Even if there might be situations where a delay in processing mail is so detrimental that it could deter an ordinary person from exercising a constitutional right, McDaniel does not provide the Court with any information that would allow it to determine whether this case presents one of those rare circumstances.   Accordingly, I suggest that the Court dismiss McDaniel's retaliation claim.

### 3.  Sovereign Immunity

That nearly resolves Jackson's motion, but she raises one final issue.  Jackson argues that if the Court allows any of McDaniel's claims to proceed past summary

judgment, then it should deny monetary relief to the extent McDaniel sues Jackson in her official capacity.  (ECF No. 21, PageID.125–26).

The Eleventh Amendment to the United States Constitution provides that no citizen of the United States shall commence a suit against any state. U.S. Const. amend. XI.; *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974).  It is well established that a suit against a state officer in his or her official capacity is a suit against the entity he or she represents.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).   Therefore, by suing Jackson, who is a Michigan official, McDaniel is effectively suing the State of Michigan.  *See Bell v. Admin. Bd. of Claims*, No. 20-cv-10193, 2020 WL 2525827, at *5 n.6 (E.D. Mich. May 18, 2020) ("Director Washington and Warden Lindsey are also MDOC employees entitled to sovereign immunity . . . ."); *Johnson v. Somero*, No. 2:08-cv-28, 2008 WL 3245457, at *2 (W.D. Mich. Aug. 6, 2008); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *2 (6th Cir. Nov. 1, 2000) ("[T]he MDOC, as an arm of the State of Michigan, is entitled to sovereign immunity.").

Accordingly, I suggest that under the Eleventh Amendment, this Court lacks subject matter jurisdiction over McDaniel's official capacity claim against Jackson because he requests only monetary damages.  *See Ex parte Young*, 209 U.S. 123, 148 (1908) (holding that the Eleventh Amendment does not prohibit suits against states for injunctive relief to redress constitutional injuries); *Timmer v. Mich. Dep't*

26

*of Commerce*, 104 F.3d 833, 836 (6th Cir. 1997) ("It is well established that § 1983 does not abrogate the Eleventh Amendment and that Michigan has not consented to the filing of civil rights suits against it in federal court."); (ECF No. 1, PageID.8 (requesting monetary damages instead of injunctive relief)).

### D. Conclusion

For these reasons, **I RECOMMEND** that the Court **GRANT** Jackson's motion for summary judgment (ECF No. 21) **IN PART**.

## III.   <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy."  Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant

to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  October 2, 2023                    s/PATRICIA T. MORRIS
                                          Patricia T. Morris
                                          United States Magistrate Judge

28