UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER MCDANIEL,

    Plaintiff,

v.

STEPHANIE JACKSON,

    Defendant.

Case No. 22-11092
Honorable Laurie J. Michelson
Magistrate Judge Patricia T. Morris

---

**OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION IN PART [26], SUSTAINING DEFENDANT'S
OBJECTION [27] AND GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT IN FULL [21]**

---

Christopher McDaniel was incarcerated at the Cooper Street Correctional Facility in Jackson, Michigan.[1] (*See* ECF No. 1, PageID.19.) While incarcerated, McDaniel began corresponding with an attorney from the Cooley Law School's Innocence Project, a legal organization that helps wrongfully convicted individuals pursue release from prison. (*Id.* at PageID.5.) McDaniel prepared a letter in response to a request from the Innocence Project for information regarding his criminal conviction. (ECF No. 21-3, PageID.143–44; ECF No. 23, PageID.200.) McDaniel says he attempted to send that letter through the prison's expedited legal mail system but was denied by residential unit manager FNU Stewart. (ECF No. 21-3, PageID.143–45; ECF No. 23, PageID.201.) Although McDaniel addressed his letter to an

---

[1] McDaniel was granted parole on May 2, 2023. *See* Michigan Department of Corrections Offender Tracking Information System ("OTIS"), https://perma.cc/3GM7-HLLP.

"attorney" named "David Williams" at the "Cooley Law School['s]" Innocence Project, Stewart claimed that the letter did not qualify as "legal mail" under Michigan Department of Corrections policy.[2] (*Id.* at PageID.198, 201; *see also* ECF No. 21-3, PageID.144.) McDaniel believes this rationale was pretext, explaining that Stewart likely rejected his letter in retaliation for a grievance he had recently filed against her. (ECF No. 1, PageID.7; ECF No. 23, PageID.210.)

Rather than send the letter via the alternative regular mail process, McDaniel kept the letter and filed another grievance against Stewart for refusing to send his letter as legal mail. (ECF No. 21-3, PageID.145; ECF No. 23, PageID.201.) A few weeks later he tried to send the letter as legal mail again but was denied by another residential unit manager, Stephanie Jackson. (ECF No. 21-2, PageID.131). McDaniel says that Jackson refused to send the letter in retaliation for the grievances he had filed against Stewart. (ECF No. 21-3, 144, 148, 151–52.) Specifically, he alleges that Jackson told him she would not send the letter because Stewart told her not to. (*Id.*) Jackson denies this and maintains that the letter was addressed only to the "Cooley

---

[2] As Judge Morris explained in her Report and Recommendation, MDOC apparently uses two distinct systems for processing outgoing mail: one for regular correspondence and one for "legal" mail. (ECF No. 23, PageID.201, 203, 205–06.) MDOC defines legal mail as mail that is "clearly" addressed to "a court, an attorney, or a party to a lawsuit . . . ." (*Id.* at PageID.205–06.) Sending letters through the "expedited legal mail" process, rather than the regular mail process, provides inmates with two advantages. First, indigent prisoners may borrow funds to either initiate lawsuits or mail "legal materials" to "a court, an attorney, or a party to a lawsuit due to pending litigation." (*Id.*) And second, mail designated as "legal mail" is delivered "as soon as possible," although the policy provides no concrete timeline for this process. (*Id.* at PageID.206.) Neither party clarifies how long it takes for legal mail to be delivered, nor do they explain how long it takes officials to process regular outgoing mail by comparison.

Law School," and that based on her understanding of MDOC policies, she thought the letter did not qualify as legal mail. (ECF No. 21-2, PageID.131–32.)

Again, McDaniel chose to retain the letter rather than send it out through the regular mail process. (ECF No. 21-3, PageID.146.) Eventually, after transferring to a different facility, McDaniel succeeded in sending his letter through the legal mail process. (*Id.* at PageID.147.) McDaniel later brought this *pro se* suit against Jackson under 42 U.S.C. § 1983, in both her individual and official capacities, for monetary damages only. (ECF No. 1, PageID.2, 9.)

All pretrial matters in this case were referred to Magistrate Judge Patricia T. Morris. (ECF No. 11.) In time, Jackson moved for summary judgment on all claims. (ECF No. 21.) Judge Morris issued a Report and Recommendation that the Court should grant Jackson's motion in part. (ECF No. 26, Page.229.) Specifically, Judge Morris construed McDaniel's complaint as raising four distinct claims under 42 U.S.C. § 1983: (1) First Amendment retaliation; (2) denial of access to the courts; (3) denial of his Sixth Amendment right to counsel; and (4) First Amendment mail-interference. (ECF No. 26, PageID.244–253.) She recommended dismissing the retaliation, access to the courts, and Sixth Amendment claims, but allowing the mail-interference claim to proceed. (*Id.*) Jackson objected to Judge Morris' recommendation that the mail-interference claim be allowed to proceed. (ECF No. 27.) McDaniel did not file any objections, nor did he respond to Jackson's objection.

For the reasons explained below, the Court will ADOPT IN PART Judge Morris' Report and Recommendation (ECF No. 26) and GRANT Jackson's motion for summary judgment (ECF No. 21) on all claims.

## I.

When a party objects to a magistrate judge's report and recommendation, a district judge reviews the issues raised by the objections de novo; there is no obligation to review un-objected to issues. *See* Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Garrison v. Equifax Info. Servs., LLC*, No. 10-13990, 2012 WL 1278044, at *8 (E.D. Mich. Apr. 16, 2012). "The district court need not provide de novo review where the objections are frivolous, conclusory or general. The parties have the duty to pinpoint those portions of the magistrate's report that the district court must specially consider." *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (cleaned up). Objections should be "specific in order to focus the busy district court's attention on only those issues that were dispositive and contentious." *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

## II.

### A.

As mentioned above, Judge Morris recommended dismissing McDaniel's First Amendment retaliation, access to the courts, and Sixth Amendment claims, but allowing the mail-interference claim to proceed. (ECF No. 26, PageID.244–253.)

At the conclusion of her Report and Recommendation, Judge Morris notified the parties that they were required to file any objections within fourteen days of service, pursuant to Federal Rule of Civil Procedure 72(b)(2) and Eastern District of

Michigan Local Rule 72.1(d), and that only the specific objections to the report and recommendation are preserved for appeal; all other objections are waived. (*Id.* at PageID.255.) Jackson raised three objections to Judge Morris' recommendation pertaining to McDaniel's First Amendment mail-interference claim. (*See* ECF No. 27.) But McDaniel did not file any objections to Judge Morris' recommendation—and the time to do so has long since passed.

The Court finds that McDaniel's failure to object is a procedural default, waiving review by this Court of Judge Morris' findings on the dismissal of his retaliation, access to the courts, and Sixth Amendment claims.  It is well established in the Sixth Circuit that "a party shall file objections with the district court or else waive right to appeal." *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). As the Supreme Court explained in *Thomas v. Arn*, the Sixth Circuit's waiver-of-appellate-review rule rests on the assumption that the parties' failure to object to a magistrate judge's report and recommendation is a procedural default "waiving review even at the district court level." 474 U.S. 140, 149 (1985); *see also Garrison v. Equifax Info. Servs., LLC*, No. 10-13990, 2012 WL 1278044, at *8 (E.D. Mich. Apr. 16, 2012) ("The Court is not obligated to review the portions of the report to which no objection was made." (citing *Thomas*, 474 U.S. at 149–52)). The Supreme Court further held that this rule does not violate either the Federal Magistrates Act or the Federal Constitution. *Thomas*, 474 U.S. at 155. And "'[a]lthough exceptional circumstances may warrant departure from this forfeiture rule in the interests of justice, no such circumstances are present in this case." *White v. AJM Packaging*

*Corp.*, No. 23-1618, 2024 U.S. App. LEXIS 5824, at *4 (6th Cir. March 11, 2024) (citing *Thomas*, 474 U.S. at 155; *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012)).

Accordingly, the Court ADOPTS Judge Morris' recommendation and DISMISSES McDaniel's First Amendment retaliation, denial of access to the courts, and Sixth Amendment claims.

## B.

That leaves McDaniel's mail-interference claim, and Jackson's objections to Judge Morris' recommendation that it proceed. Jackson raises three objections—two are procedural in nature and one is substantive.

The Court begins with McDaniel's substantive objection—that Judge Morris erred in finding McDaniel plausibly alleged a First Amendment mail-interference claim. (ECF No. 27, PageID.262.)

Incarcerated individuals have a distinct First Amendment interest in both sending and receiving mail. *Thornburgh v. Abbott*, 490 U.S. 401 (1989). But "prison officials may impose restrictions that are reasonably related to security or other legitimate penological objectives." *Sillier v. Brooks*, 343 F.3d 868, 873 (6th Cir. 2003). The Sixth Circuit has found a "heightened concern" where the mail is considered "legal mail." *Id.* at 874 (citing *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996)). Indeed, courts "afford First Amendment protections for legal mail where it may impact 'the prisoner's legal rights, the attorney-client privilege, or the right of access to the courts.'" *Id.*

6

"The determination of whether particular kinds of correspondence qualify for the constitutional protection accorded a prisoner's 'legal mail' is a question of law properly decided by the court." *Sallier,* 343 F.3d at 873 (citing *Seal v. Morgan,* 229 F.3d 567, 580 (6th Cir. 2000)). On the present record, the Court find's McDaniel's letter was legal mail. For one, the envelope, attached to McDaniel's complaint and summary judgment response, was addressed to "Attorney David Williams" at the "Cooley Law School" Innocence Project. (ECF No. 1, PageID.21; ECF No. 23, PageID.198.) And the letter was prepared by McDaniel in response to a request for information concerning his conviction from the Innocence Project. (*Id.* at PageID.19–20); *see e.g.*, *Caldwell v. Ewing*, No. 03-1417, 2006 WL 771213, at *6 (C.D. Ill. Mar. 24, 2006) (finding that "letters [addressed only] to the NAACP and ACLU would not be considered legal mail since these are referral agencies" but "would be considered legal mail . . . if they were addressed to a specific attorney.") McDaniel also provided the mailing letter and envelope he initially received from the Innocence Project, which itself had been designated as legal mail by the prison. (ECF No. 1, PageID.19.)

The Sixth Circuit has held that "'blatant disregard' for mail handling regulations concerning legal mail violates constitutional protections," *Merriweather v. Zamora*, 569 F.3d 307, 317 (6th Cir. 2009) (citing *Lavado v. Keohane*, 992 F.2d 601, 609 (6th Cir. 1993)), and that "[t]wo or three pieces of mail opened in an arbitrary or capricious way suffice to state a claim." *Id.* (citing *Sallier*, 343 F.3d at 879–80; *Lavado*, 992 F.2d at 609). This case, however, does not involve any improper review of McDaniel's legal mail. Instead, it involves one instance of Jackson refusing to

designate McDaniel's letter as legal mail. But "isolated instances of interference with prisoners' mail" do not rise to the level of a constitutional violation under the First Amendment. *See Johnson v. Wilkinson*, No. 98-3866, 2000 WL 1175519 (6th Cir. Aug. 11, 2000) ("This random and isolated interference with Johnson's mail did not violate his constitutional rights." (citation omitted)); *see also Okoro v. Scibana*, 63 F. App'x 182, 184 (6th Cir. 2003) (stating that "Okoro was only able to provide one specific incident where he allegedly did not receive the full contents of a letter from his wife," and concluding that "[s]uch a random and isolated incident is insufficient to establish a constitutional violation" (citation omitted)); *cf. Colvin v. Caruso*, 605 F.3d 282, 293 (6th Cir. 2010) (citing *Johnson* for the holding that "isolated interference" with prisoners' rights may not rise to the level of a First Amendment violation).

Here, as mentioned, McDaniel complains of only one incident of alleged interference with his legal mail by Jackson.[3] He says that Jackson refused to send his letter to the Cooley Law School Innocence Project via the prison's expedited legal mail process because Stewart told her not to in retaliation for the grievances he previously filed against Stewart.[4] Taking McDaniel's version of the facts to be true, and even assuming Jackson's refusal to send McDaniel's letter was not an innocent

---

[3] McDaniel does claim that Stewart initially refused to send his letter as legal mail. (*See* ECF No. 21-3, PageID.143–45; ECF No. 23, PageID.201.) But Stewart is not a defendant in this suit—McDaniel's complaint pertains only to Jackson's conduct.

[4] Jackson says that she believed the letter did not qualify as legal mail under MDOC's policy. But this is belied by the record. The envelope was specifically addressed to "Attorney David Williams" at the Cooley Law School Innocence Project. (ECF No. 23, PageID.198; ECF No. 1, PageID.21.)

8

mistake, the Court finds that this single incident would not rise to the level of a constitutional violation given the rulings in *Johnson* and *Caruso*.

Judge Morris rejected this reasoning in her thorough Report and Recommendation. (ECF No. 26, PageID.250.) She noted that "[a]lthough the [*Caruso*] Court did not explain why it believed 'random and isolated' interferences with First Amendment interests to be lawful, it apparently used that phrase to describe the standard for *accidental* First Amendment deprivations." (*Id.*) And she explained that "the line of cases [*Caruso*] relie[d] on clarify that random and isolated interferences do not raise constitutional concerns only if they are accidental." (*Id.* (citing *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990).) So, she found that *Caruso* "does not apply here because (1) McDaniel raises a genuine dispute as to whether Jackson mistakenly read his envelope as being addressed simply to the Cooley Law School and (2) there is no evidence in the record indicating that the slow processing of regular mail, relative to 'expedited' legal mail, is accidental." (*Id.*)

Judge Morris' understanding of *Caruso* is not unreasonable. Indeed, *Caruso* itself did deal with isolated incidents of accidental conduct. *See Caruso*, 605 F.3d at 293 (finding that prison officials who "mistakenly" served Jewish inmate non-kosher food did not violate the First Amendment because their transgressions were "isolated" and noting that there was no "evidence that the isolated mistakes were willful"). But the Sixth Circuit case *Caruso* relied on for its holding, which dealt specifically with a First Amendment mail interference claim, did not make any distinction between intentional and accidental conduct. *See Johnson*, 229 F.3d at 1152  (finding that

9

"random and isolated interference with Johnson's mail did not violate his constitutional rights" where the prison placed Johnson's mail—a copy of the Georgetown Law Journal—in the prison vault without notifying him, in violation of prison rules).

Importantly, the Sixth Circuit recently held that a single incident of mail tampering did not rise to the level of a constitutional violation. *Smith v. Goostrey*, No. 23-1025, 2023 WL 5024659, at \*3 (6th Cir. Aug. 4, 2023) ("Smith clarifies on appeal that his tampering-with-legal-mail claim is limited to the single incident in September 2021. Such a limited and isolated event does not rise to the level of a constitutional violation, however." (citing *Caruso*, 605 F.3d at 293).) In *Goostrey*, the plaintiff alleged that prison officials opened his legal mail outside of his presence on a single occasion. (*Id.*) While it was not clear that the defendants in *Goostrey* acted willfully, their conduct of opening Goostrey's mail outside of his presence does not appear to be accidental or a simple mistake like that at issue in *Caruso*. Yet the Sixth Circuit again found this single incident did not rise to the level of a constitutional violation under the First Amendment. Given the broad language used by the Sixth Circuit in *Goostrey*, and the lack of circuit precedent narrowing the application of the rule from *Johnson* and *Caruso* to accidental conduct alone, the Court declines to adopt that narrow reading of those cases.

One final point. The district court in *Goostrey* "recognize[d] that legal mail is entitled to additional protections and that it is possible that under some circumstances, even one instance of improperly processing legal mail could violate an

inmate's constitutional rights. However, . . . the facts alleged by Plaintiff are not such a circumstance." *Smith v. Goostrey*, No. 22-753, 2022 WL 17579095, at *8 (W.D. Mich. Dec. 12, 2022), *aff'd in part, vacated in part, remanded*, No. 23-1025, 2023 WL 5024659 (6th Cir. Aug. 4, 2023). Assuming the Sixth Circuit was leaving open the possibility for such a circumstance to exist, this case is also not it. There is nothing to suggest that Jackson was unwilling to send McDaniel's letter by regular mail or that time was of the essence with this particular correspondence.

Accordingly, because McDaniel's First Amendment mail-interference claim is based upon a single and isolated incident of interference with his legal mail—that claim will be dismissed.

Because the Court agrees with Jackson's substantive objection and dismisses the mail-interference claim, it will not address Jackson's procedural objections.

### III.

In sum, the Court ADOPTS Judge Morris' Report and Recommendation (ECF No. 26) in part and GRANTS Jackson's motion for summary judgment (ECF No. 21) on all claims. A separate judgment will follow.

IT IS SO ORDERED.

Dated: March 27, 2024

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

11